(Opinion published 56 N. W. Rep. 1112.)

---

GEORGE B. CRUMMEY *vs.* SAMUEL W. RAUDENBUSH.

Argued Nov. 10, 1893.    Affirmed Dec. 7, 1893.

No. 8344.

**Detention of chattel sold on credit to one discovered to be insolvent.**

Where the vendor has contracted to sell personal property on credit, if, before payment, and while he still retains possession of the property, he discovers that the vendee is insolvent, he may hold the goods as security for the price.

**"Insolvent" defined.**

"Insolvent," as used in this connection, means merely a general inability to pay one's debts.

**Omission to state insolvency as reason for detention does not waive the right.**

Where the vendor refuses to deliver the property to the vendee until the purchase money is paid or secured, the fact that he does not specifically assign the insolvency of the vendee as the ground of his refusal does not

amount to a waiver of his lien, and will not estop him from asserting it as a defense to an action for damages for refusing to deliver the goods.

**Findings supported by the evidence.**

Evidence *held* to justify a finding that plaintiff was insolvent.

Appeal by plaintiff, George B. Crummey, from an order of the Municipal Court of the City of St. Paul, *H. W. Cory*, J., made June 29, 1893, denying his motion for a new trial.

This action was brought to recover $225 damages for breach of a contract, of which the following is a copy;

St. Paul, April 2, 1889.

Received of George B. Crummey one Schumacher square piano at $225.00 in part pay for No. 3 Schumacher upright piano in walnut, mahogany or ebony, at $500.00, balance $275.00, to be paid at $50.00 per quarter, from date of delivery of upright piano—8 per cent. per annum. S. W. RAUDENBUSH.

Defendant answered that he was and ever had been ready and willing to deliver the new upright piano on receiving the $275. He alleged that he had learned that plaintiff was insolvent and he claimed the right to retain the piano until paid the balance of the price. The trial Court sustained this defence and directed judgment that plaintiff take nothing by this action. He moved for a new trial, and being denied appeals.

*James E. Markham*, for appellant.

There was no evidence offered on the trial reasonably tending to show that the plaintiff was, either at the time of the trial or at any time after the making of the contract, in fact insolvent. *Nininger* v. *Knox*, 8 Minn. 140.

*O. H. Hubbard*, for respondent, cited *Pardee* v. *Kanady*, 100 N. Y. 121; *Arnold* v. *Delano*, 4 Cush. 33; *Ex parte Chalmers*, L. R. 8 Ch. App. 289.

MITCHELL, J. Stated according to its legal effect, the contract, upon which this action was brought, was an executory one for the sale of a piano by defendant to plaintiff, a part of the price being

paid at the date of the contract, and the balance to be paid in quarterly installments from and after the date of the delivery of the piano. The action is for damages for a refusal to supply the piano according to the contract. It is not alleged that the balance of the price has ever been paid or tendered, the plaintiff standing on the terms of the contract that it was to be furnished on credit. Much of the answer consists of entirely irrelevant matters, the only defense alleged being that since the making of the contract the plaintiff had become, and still is, insolvent, and the only important question in the case is whether the defendant has established a defense justifying his refusal to deliver the piano on that ground.

Where a vendor contracts to sell personal property on credit, he thereby agrees to waive his lien for the purchase money; but he does so on the implied condition that the vendee shall keep his credit good. If, therefore, before payment, and while the vendor still retains possession of the property, he discovers that the vendee is insolvent, he may hold the goods as security for the price. The insolvency of the vendee does not rescind the contract, and is not of itself a ground for rescission. It merely entitles the vendor to demand payment in cash before parting with possession of the property. Courts have differed as to the name to be given to this right, but they all recognize its existence. Like the analogous right of stoppage *in transitu*, it grows out of the vendor's original ownership and dominion, and is founded on the equitable principle that one man's property ought not to go to pay another man's debt. The right is not limited to cases where the insolvency of the vendee occurred after the date of the contract, but exists also even where the insolvency existed at that time, but was not discovered by the vendor until afterwards; and, as the presumption of both reason and law is that, where a vendor sold goods on credit, he believed that the purchaser was solvent and able to pay, the burden is on the vendee to prove that the vendor had knowledge of the insolvency at the time, and entered into the contract with that knowledge. The right is not affected by the fact that part of the price has been paid; and it makes no difference whether the sale was of a specific article appropriated to the contract, or, as in this case, a contract to supply an article of a certain description. The term "insolvent" is not used in any technical sense. It is not necessary that the vendee

should have been adjudged a bankrupt or insolvent, or have made an assignment of his property. Insolvency, as applied to this branch of law, means a general inability to pay one's debts or to meet one's financial engagements. Passing to the facts of this case, an examination of the evidence satisfies us that it amply justified the trial court in finding that the plaintiff was insolvent in the fullest sense of the term. It follows that defendant had a right to refuse to deliver the property without payment in full of the price, provided he properly asserted that right, and had not in some way waived it.

The contract was made in April, 1889. The evidence is practically undisputed that for some two years afterwards the defendant was not only able and ready to furnish the piano, but repeatedly urged the plaintiff to come and select an instrument, but that he failed to do so, giving as a reason his inability to meet the payments. Finally, in the winter or early spring of 1893, after defendant had ceased to represent that make of piano in the trade, and hence no longer kept it in stock, the plaintiff for the first time formally demanded the delivery of the instrument within a specified time. Failing in some efforts to induce plaintiff to accept a piano of another kind, the defendant required some assurance that, if he procured a piano of the kind called for by the contract, the plaintiff would be ready to pay for it in cash, or give a mortgage on the instrument to secure the purchase price. The plaintiff positively refused to agree to do either, and insisted on the terms of the original contract for the delivery of the property on credit, which defendant as positively refused to do.

The evidence would fully justify the conclusion that the defendant was always willing to furnish the piano if plaintiff would pay the price in cash, or secure it by mortgage on the property, and that his refusal merely went to the extent of refusing to furnish it on credit without security.

But at no time during the negotiations did defendant assign the insolvency of the plaintiff as his reason for demanding cash or security, or give any special reason for doing so, except that when demanding the mortgage he said it was the custom of the trade. On this ground plaintiff's counsel invoke the doctrine that if a person, when called upon to deliver, places his right to retain the goods upon a ground inconsistent with a claim by virtue of a specific lien, this

is a waiver of the lien; and that on the trial he will not be permitted to rest his refusal on a different and distinct ground from that on which he claimed to retain the property at the time of the demand. An examination of the authorities on the subject, from the early case of *Boardman* v. *Sill*, 1 Camp. 410, down, satisfies us that they all proceed upon principles essentially of equitable estoppel, and limit the application of the doctrine invoked by counsel to cases where the refusal to deliver the property was put on grounds inconsistent with the existence of a lien, or on grounds entirely independent of it, without mentioning a lien. Thus it has been repeatedly held that a lien is not waived by mere omission to assert it as the ground of refusal, or by a general refusal to surrender the goods, without specifying the ground of it, except in certain cases, where the lien was unknown to the person making the demand, and that fact was known to the person on whom the demand was made. In such cases, if the ground of the refusal is one that can be removed, the other party ought in fairness to have an opportunity to do so. But no such state of facts exists in this case. While defendant did not specify his vendor's lien by reason of plaintiff's insolvency as the ground of his refusal, yet he never placed his refusal on any ground inconsistent with or independent of it. On the contrary, from first to last, what he insisted on was payment of, or security for, the price of the property; and the ground of his refusal was the refusal of plaintiff to give either. True, at the last, he announced his positive refusal to furnish the piano unless plaintiff would agree to give a chattel mortgage on it,—a thing which he had no legal right to insist on; but it is very evident that this demand on defendant's part was merely an alternative for payment in cash, which he had a right to demand, but which plaintiff had refused. The plaintiff probably had a right to be informed, as he was, that the property was held for the purchase money, for that was a matter which he could remedy by payment, but it would have availed him nothing to be informed that defendant's right to retain the property for the price was based on his insolvency, for that was a fact which he could not have changed. We can see nothing in defendant's acts of omission or commission that amounted to a waiver of his title, or which should estop him from now asserting it.

The rulings of the trial court on the admissibility of evidence as

·to plaintiff's insolvency were not always correct, or even consistent; but the only error of which plaintiff could complain is that, in one instance, the defendant was allowed to give his opinion that plaintiff was insolvent.

We think, however, that this was error without prejudice, for the reason that the other evidence, such as plaintiff's own admission of inability to pay; the inability of others, after search and inquiry, to find any property belonging to him; and that he was not in any business in this state, of which he had practically ceased to be a resident,—was such as, in the absence of any rebutting evidence, to require a finding that he was insolvent.

Order affirmed.

(Opinion published 56 N. W. Rep. 1113.)