WUNDERLICH v. NATIONAL SURETY CORPORATION.

No. 2875.

District Court, D. Minnesota, Third Division.

Sept. 13, 1938.

642

Joseph W. Finley and Bundlie, Kelley and Finley, all of St. Paul, Minn., for plaintiff.

Pierce Butler, Jr., and Doherty, Rumble, Butler, Sullivan & Mitchell, all of St. Paul, Minn., for defendant.

SULLIVAN, District Judge.

On December 30, 1933, the State of Alabama let a certain contract to the Hardaway Contracting Company (hereinafter called the general contractor) for the construction of a certain road in said State, and by the terms of said contract the general contractor agreed to furnish and deliver all materials and do and perform all work and labor required to be furnished and delivered, done and performed, in the improvement and construction of said highway, in strict conformity with the notice to the contractor and proposal, and the plans and specifications prepared by the highway director.

On December 28, 1933, as a condition precedent to the execution of the contract, and in accordance with the laws of the State of Alabama, the said general contractor as principal, and the defendant herein as surety, executed a bond running to the State of Alabama as obligee, for the benefit, however, not only of said obligee, but also of all persons supplying said principal with labor, material, feed-stuffs or supplies, in the execution of the work provided for in the contract hereinbefore referred to, and the bond being conditioned, among other things, for the prompt payment to all of said persons of all sums due or payable on account for the furnishing of said items. Thereafter, the said general contractor and the defendant herein on the one hand, and the State of Alabama on the other hand, entered into and agreed to be bound by a certain supplemental agreement relative to certain items and prices covered by the contract hereinbefore referred to, and said supplemental agreement being made a part of said original contract, and said original contract remaining in full force and effect, except insofar as it might be modified by said supplemental agreement.

At or about the time the said general contract was made and entered into, the said general contractor and the plaintiff herein entered into a certain subcontract wherein and whereby plaintiff agreed to do and perform a certain portion of the work, including stripping and unclassified excavation, and the furnishing of certain pipes or culverts in connection with said road project, and in connection with said general contract, and to furnish materials and supplies in connection with the performance of said subcontract.

The general contract between the State of Alabama and the general contractor has been in all things performed and completed, and on or about April 15, 1935, a final settlement was made between the general contractor and the State; and likewise the

subcontract between the general contractor and this plaintiff has in all things by the plaintiff been duly performed and completed.

This suit was commenced on April 14, 1936, and is brought by the subcontractor against the surety on the general contractor's bond for the purpose of recovering the balance due on the agreed price for certain stripping and so-called unclassified excavation, leaving a balance of 480 yards of stripping excavation, and 13,219 yards of unclassified excavation for which he claims he has not been paid by the general contractor.

By stipulation entered into on the taking of certain depositions herein, and read into evidence at the trial of the case, and under the pleadings and the proof, the issue on the merits is set out in the following table:

|  | Claimed by Plaintiff (Cubic Yds.) | Paid Plaintiff By Hardaway | Difference Sued For | Unit Price | Amount |
|---|---|---|---|---|---|
| Unclassified Excavation | 90,685 | 77,466 | 13,219 | 35¢ | $4,626.65 |
| Stripping Excavation | 4,670 | 4,190 | 480 | 45¢ | 216.00 |
| 15 Inch C. M. Pipe | $30.80 | $24.64 | 88 ft. | 7¢ | 6.16 |
|  |  |  |  |  | $4,848.81 |

tion, and for the furnishing of certain pipe, there being no apparent objection to the allowance of this last item, which amounts to the sum of $6.16. The so-called unclassified excavation consists of common excavation, cutting grades in existing road, and hauling material onto a new road. The plaintiff, prior to the commencement of the suit, was paid by the said contractor for 4,190 yards of stripping excavation and for 77,466 yards of unclassified excavation. The plaintiff claims, however, that he is entitled to a total of 4,670 yards of stripping excavation, and a total of 90,685 yards of unclassified ex-

The plaintiff has duly furnished the State an affidavit that labor, material and supplies on such general contract had been furnished by him and that payment for all of the same had not been made, and that more than forty-five days prior to the commencement of this action, plaintiff duly notified the defendant in writing of the amount claimed to be due on account of the subcontract hereinbefore referred to, and of the nature of his claims.

(1) At the outset, the jurisdiction of this Court is challenged by the defendant upon the ground that the statute[1] pursuant

1 Alabama Code of 1928. Chapter 32A —Alabama Highway Code.

"§ 1397(30). *Bonds of contractors.—*

"(a) Any person, firm or corporation entering into a contract with this state, or any county or municipal corporation in this state for the repair, construction or prosecution of any public building or public work, highways and bridges, shall be required, before commencing such work, to execute a bond payable to the state, county or municipal corporation, with good and sufficient surety, approved in writing by the authority having charge of the making of such contract, conditioned that such contractor or contractors, shall faithfully perform such contract of the work agreed and contracted to be done, and shall promptly make payment to all persons supplying him or them with labor, material, feed-stuffs, or supplies, in the execution of the work provided for in such contract. Provided, however, that this section shall not apply to contracts of less than $1,000.00 in amount, as to the state, and less than fifty dollars as to counties and cities.

"(b) Any person, firm or corporation supplying the contractor with labor, materials, feed-stuffs or supplies, after the complete performance of the contract and within sixty days therefrom, shall, upon application therefor and furnishing affidavit to the authority under the direction of whom such work has been prosecuted, that labor, material, feed-stuffs or supplies for such work has been supplied by him or them, and that payment for the same has not been made, be furnished a certified copy of said bond, and shall have a right of action thereon, and shall be authorized to bring suit on said bond in his or their name or names, and to prosecute the same to final judgment and execution.

"(c) The contractor shall immediately after the completion of the contract give notice of said completion by an advertisement in some newspaper of general circulation published within the city or

644

to which the bond in this case was executed requires that any suit on a bond shall be instituted in the County where the work is done (DeKalb County, Alabama), or in any county where the contractor does business by an agent, or, if the provisions of the 1935 Act [2] (pertinent portions thereof are quoted in the footnote below) are applicable, then

county wherein the work has been done for a period of four (4) successive weeks. In no instance shall a final settlement be made upon the contract until the expiration of thirty days after the completion of same.

"(d) Upon the demand of the contractor for final settlement he shall file with the proper officials or authority by and with whom said contract was made, a sworn statement by the publisher of the newspaper as prescribed in provision (c) of this section, attaching thereto a copy of said publication of notice.

"(e) That where suit is instituted by any such creditors on the bond of the contractor, it shall not be commenced until after the complete performance of said contract and final settlement thereof; and where suit is so instituted by creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto. If the recovery on the bond should be inadequate to pay the amounts found to be due to all of said creditors, judgment shall be given to each creditor prorata of the amount of the recovery. In all suits instituted under the provisions of this section, personal notice of the pendency thereof, informing them of their right to intervene as the court may order, shall be given to all known creditors, and in addition thereto, notice by publication for four successive weeks shall be given in some newspaper of general circulation published in the county where the work or a part thereof is being or has been performed. 'Provided, that all actions against the surety, as provided under this section, must be commenced within sixty days after the complete performance of said contract and final settlement thereof. Any action hereunder may be brought in the county where the work was done or in any county where the contractor does business by agent.'

"(f) If there be no newspaper published in the city or county as provided in subdivisions (c) and (e) then such publication shall be made in a newspaper having a general circulation in the city and county where the work is completed and by a notice posted at the county court house of the county in which this work is done. (1927, pp. 356–358.)"

2 Laws of Alabama, 1935, Page 70, as Found in 1936 Cumulative Supplement to the Alabama Code of 1928, Chapter 53A, Public Works, Article 2, Contracts.

"§ 2931(9). *Contractor's bond.*—Any person, firm or corporation entering into a contract with the state or any county or municipal corporation or sub-division thereof in this state for the repair, construction or prosecution of any public buildings or public work, highways or bridges, shall be required, before commencing such work, to execute a performance bond, with penalty equal to 50 per cent of the amount of the contract price, and in addition thereto, another bond with good and sufficient surety, payable to the state, county or municipal corporation or subdivision, letting the contract, in an amount not less than 50% of the contract price, with the obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor, materials, feed-stuffs or supplies for or in the prosecution of the work provided for in such contract, and for the payment of reasonable attorneys fees, incurred by successful claimants or plaintiffs in suits on said bond; and any person, firm or corporation that has furnished labor, materials, feed-stuffs or supplies for or in the prosecution or repair of any public building or public work, highways or bridges, and payment for which has not been made, shall be authorized to institute an action upon said bond in his or their name or names and to have their rights and claims adjudicated in such action and judgment rendered thereon; provided, however, that no suit shall be instituted on said bond until after forty-five days written notice to the surety thereon of the amount claimed to be due and of the nature of the claim. Such suit shall be commenced not later than one year from the date of final settlement of said contract. The giving of said notice by registered mail, postage prepaid, addressed to the surety at any of its places of business or offices shall be deemed sufficient hereunder. In the event the surety or contractor fails to pay such claim in full within forty-five days from the mailing of such notice, then such person or persons shall be entitled to recover of the contractor and surety, in addition to the amount of said claim, a reasonable attorney's fee, together with interest on such claim from the date of such notice. Every person or persons having a right of action on said last described bond as herein provided shall, upon written application to the authority under the direction of whom such work

suit should be brought in the county "in which the work provided for in said contract is to be performed, or in any county where the contractor or his surety does business." The objection to the jurisdiction of this Court does not raise the question of jurisdiction of the Federal courts as such, but does raise the question of jurisdiction of *any* court outside of Alabama.

It appears to be the well established rule that the jurisdiction of the District Courts of the United States depends upon the acts passed by Congress pursuant to the power conferred upon it by the Constitution of the United States, and that such jurisdiction "cannot be enlarged or abridged by any statute of a state." Goldey v. Morning News, 156 U.S. 518, 523, 15 S.Ct. 559, 561, 39 L.Ed. 517.

Section 41, subd. 1, Title 28, U.S. C.A. (Judicial Code, § 24, subd. 1 amended, as amended August 21, 1937, c. 726, § 1, 50 Stat. 738), provides, among other things, that the District Courts shall have original jurisdiction of all suits of a civil nature where the matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000, and is between citizens of different States. In this case, both of these requisites for jurisdiction on the part of this Court are present. The amount exceeds $3,000, the plaintiff is a citizen of Minnesota, and the defendant is a citizen of the State of New York and was, at the time of the institution of this action, doing business in Minnesota. Under the statute referred to above, the District Court of the United States for Minnesota has jurisdiction of this case, unless the Alabama statutes hereinbefore referred to are construed to require that suit may only be brought within the territorial limits of Alabama, in either the Federal or State court of that District and State. To give the statute such a construction would be to establish the doctrine that it is competent for a State legislature to pass a law which would oust a court of the United States of a jurisdiction which the acts of Congress and the Constitution of the United States had conferred upon it, but such a construction cannot be countenanced. State legislatures cannot impair, restrict or destroy the jurisdiction of Federal courts granted to them by the Constitution and the laws of the United States. No State, by conferring exclusive juris-

has been prosecuted, setting out that labor, material, feed-stuffs or supplies for such work has been supplied by him or them and that payment therefor has not been made, be promptly furnished a certified copy of said additional bond and contract. Such claimant shall be authorized to bring suit on said bond in the county in which the work provided for in said contract is to be performed, or in any county where the contractor or his surety does business, for his or their use and benefit against said contractor and his surety or either of them. In addition to any other legal mode of service, service of summons and other process in suits brought in the county where the work is let or done may be had on the contractor and/or the surety on the last described bond, by leaving a copy of the summons and complaint or other pleading or process, with the chairman of the state highway commission if the contract be a state highway contract or with the executive officer of the city, town, board, commission or authority letting the contract, or charged with the payment of the contract price, if the contract be not a state highway contract. The bond last described shall have a provision binding the principal contractor and surety to the mode of service above described; and consenting that such service shall be the same as personal service on the contractor and/or surety. Immediately on service being made on the chairman of the state highway commission or executive office of a city, town, board, commission or authority, it will be the duty of such chairman or executive officer to immediately mail a copy of such process to the contractor and surety, at the address given in the bond.

"This act shall not require the taking of bond to secure contracts of less than $1000.00 in amount.

"The contractor shall immediately after the completion of the contract give notice of said completion by an advertisement in some newspaper of general circulation published within the city or county wherein the work has been done for a period of four (4) successive weeks. In no instance shall a final settlement be made upon the contract until the expiration of thirty days after the completion of same. Proof of publication of said notice shall be made by the contractor to the authority by whom the contract was made, by affidavit of the publisher and a printed copy of the notice published. If no newspaper is published in the county where the work is done, the notice may be given by posting at the court house for thirty days and proof of same shall be made by the probate judge or sheriff and the contractor."

diction of controversies upon its own courts, can deprive the Federal courts of the jurisdiction granted to them by the creators. Barber Asphalt Paving Co. v. Morris, 8 Cir., 132 F. 945, 67 L.R.A. 761, and cases cited.

Generally, State laws describe the manner, method and right to establish claims and demands against the estates of decedents, and the jurisdiction of such claims under State laws is usually expressly entrusted to probate courts of the State, but in Security Trust Company v. Black River National Bank, 187 U.S. 211, 227, 23 S.Ct. 52, 47 L.Ed. 147, it was held that a creditor of the deceased, a citizen and resident of another State than that of the deceased, might establish his claim in an action against the representative of the deceased in an appropriate Federal court without first presenting his claim to the probate court of the county in which the deceased resided prior to his death, and wherein said probate court was situated.

Again, in the case of Chicot County v. Sherwood, 148 U.S. 529, 13 S.Ct. 695, 37 L.Ed. 546, the Court, in considering a statute of the State of Arkansas, which provided that no suit against a county in that State could be maintained in any court otherwise than by a presentation of a claim to the county court for allowance or rejection, and then making provision for appeal to an appellate State court, quoted with approval the following language appearing in Hyde v. Stone, 20 How. 170, 175, 15 L.Ed. 874: "But this court has repeatedly decided that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the states, which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power." [page 697].

This suit is based upon the bond given by the general contractor as principal, and the defendant as surety thereon, and the following language appears in the bond: "The said principals and sureties agree as a part of this obligation that such contractor shall promptly make payment to all persons supplying him or them with labor, material, feed stuffs or supplies, in the execution of the work provided for in such contract, as provided for in Section 28 in the Act of the Legislature approved August 23, 1927, and designated as 'The Alabama Highway Code'." (Act quoted in Footnote 1, on pages 4 and 5 hereof.)

The plaintiff in this case is a person who comes within the express intendment of this Act, and is properly authorized by the Act to maintain this suit. Washington v. Young, 10 Wheat. 406, 23 U.S. 406, 6 L.Ed. 352. While the bond is given pursuant to a State statute, and for the class for whose benefit is provided therein, it does not follow that the statute may limit, restrict or prescribe the jurisdiction of Federal courts in suits brought on such bond. Where there is proper diversity of citizenship which will give the District Courts of the United States general jurisdiction of the controversy, and where the amount involved is sufficient for general jurisdiction, the Federal statutes confer upon the plaintiff the right to select the district, and the laws of the State regulating the venue as to suits in State courts do not have the effect to restrict the territorial jurisdiction of Federal courts within limits more narrow than those prescribed by the Acts of Congress. The power to contract with citizens of other States implies liability to suit by citizens of other States, and no statute of suability can defeat a jurisdiction given by the Constitution and the laws of the United States. Cowles v. Mercer County, 7 Wall. 118, 122, 19 L.Ed. 86. The bond sued on is, in its essence, a contract between the obligors, general contractor and his surety on the one hand, and the county and all persons for the benefit of whom such bond is given, on the other hand. National Surety Company v. Architectural Decorating Company, 226 U.S. 276, 282, 33 S.Ct. 17, 57 L.Ed. 221.

Summarizing, Section 41 of Title 28, U.S.C.A., confers jurisdiction upon this Court in this suit. The plaintiff has rightfully selected this forum for a trial of this cause, and the legislature of the State of Alabama was incompetent to pass any effective act, the purpose of which was to limit or qualify the jurisdiction of the District Courts of the United States, and the provisions of the 1927 and 1935 Acts designating the forum are ineffective insofar as the jurisdiction of the District Courts of the United States is concerned.

(2) The defendant next contends that the statutory period within which this action might have been brought expired under the 1927 Act, sixty days from and after April 15, 1935, the date of "the com-

plete performance of said contract and final settlement thereof."

Plaintiff on the one hand argues that the limitation period of "not later than one year from the date of final settlement of said contract" in the Act of 1935 applies. The 1935 Act became effective February 8, 1935. Section 6 thereof expressly repeals Section 28 of the 1927 Act (Code Ala. 1928, § 1397(30). The statute of limitations in the 1927 Act was repealed before this action accrued, and the statute of limitations set out in the 1927 Act could not be effective against the cause of action pleaded herein. "The repeal of a statute of limitations does not impair a bar perfected before the repeal." Martin v. Martin, 35 Ala. 560, 568; Davis v. Sugg, 215 Ala. 93, 109 So. 745. It necessarily follows that the repeal of a statute of limitations before the cause of action arose restores the plaintiff and this defendant to their status as the same existed before the passage of the act of limitations. Davis v. Sugg, supra. It is necessarily true that a statute of limitations or a statute limiting the time within which an action may be brought has no application to a situation which has not developed to a point from which the statute may commence to run. The limitation period set out in the 1927 Act cannot be considered as limiting the time within which this action might have been brought. The period, then, within which this action could have been commenced is either the one year period set out in the 1935 Act or the general statute of limitations for the State of Alabama, which is six years. The Court is of the opinion that the limitation of time for the bringing of this action had not expired. The bond in question was authorized under the 1927 Act. The obligees named therein, in addition to the State, are persons furnishing labor and materials on the job, and this plaintiff is necessarily included in such latter classification, and it properly may be said that the 1927 Act entered into the obligation, but it is settled law that while "in a general sense, the laws in force at the time a contract is made enter into its obligation, parties have no vested right in the particular remedies or modes of procedure then existing." Oshkosh Waterworks Company v. Oshkosh, 187 U.S. 437, 23 S.Ct. 234, 47 L.Ed. 249.

The 1935 Act did not disturb the obligation of the contract. This cause of action is not purely statutory. It does not arise upon the statute, but upon the contractual liability created in pursuance of the statute. Although the contract derives its being from the statute, the former immediately acquires an independent existence competent to survive the destruction of the statute. Coombes v. Getz, 285 U.S. 434, 442, 52 S.Ct. 435, 436, 76 L.Ed. 866. The contractual obligation of the defendant was to pay, if its principal did not, the persons referred to in the bond, including this plaintiff, who furnished labor and materials on the project. The remedy has been changed in the 1935 Act, and it has been consistently held that without impairing the obligation of the contract, the remedy may be modified as the wisdom of the Legislature or Congress shall direct. Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481; National Surety Company v. Architectural Decorating Company, supra.

The Act of 1935 covers the same field as the Act of 1927, but is broader in its scope, and comprehends situations in addition to those contemplated in the 1927 Act. The procedure under the 1935 Act has been changed, as has the statute limiting the time in which actions may be brought against the surety on a public contractor's bond. The 1935 Act supersedes the 1927 Act. This suit, having been commenced on April 14, 1936, and the date of the final settlement of the contract being April 15, 1935, was not barred by any effective statute of limitations on the date of its commencement.

(3) In December, 1934, the plaintiff became concerned with the yardage being allowed by the State engineers for unclassified and stripping excavation. He had some communications with the general contractor, and also with the State Highway Department of Alabama, and as a consequence thereof, plaintiff caused cross-sections of the completed job to be made in the latter part of the year 1934. The State Highway Department, previous to the commencement of work on the job, had taken cross-sections of the proposed project. Neither the engineers for the state or the general contractor took any cross-sections of the project during its progress, nor of the completed job. From computations based on the original cross-sections taken before the commencement of work, and the cross-section taken by the plaintiff after the completion of the job,

the State engineers determined a total of 90,685 cubic yards of unclassified excavation and 4,670 cubic yards of stripping excavation, and these totals were reflected in the estimates, current and final, of the State Engineer's office. These totals of yardage were determined after a conference held between the engineers for the State and representatives of the plaintiff and the general contractor.

The evidence disclosed that the records and current estimates of the State engineers in this project were far from accurate, and were, in fact, incorrect. Mr. Herzberg, one of the Commissioners of the State Highway Commission of the State Highway Department of Alabama, after the conference referred to above, directed Mr. Hugensmith, one of the Highway Department's engineers, in preparing the final estimate, to deduct the aggregate amounts of stripping and unclassified excavation which appeared in the previous current estimates from the amount which Mr. Herzberg gave to him as total fixed amounts of yardage for unclassified excavation and stripping excavation, being respectively 90,685 cubic yards and 4,670 cubic yards, and then to insert such differences as the amount of yardage in the final estimate as current items of excavation. The total excavation as revealed by the cross-sections of the plaintiff, was 95,655 and 7,848 cubic yards.

"Force account", as used in this case, means, according to the testimony, such work as could not be charged to or set out under any special items of the contract, such work being done and charged to the contractor at actual cost plus 10% thereof. In performing the contracts of this job, the items of "force account" were usually converted to yardage, and in the estimates, appeared as yardage, although such conversion was contrary to Federal regulations on road projects financed in part by the Federal Government, and this was such a project.

The plaintiff argues that by reason of a provision in the contract between himself and the general contractor, providing that he shall be paid "for the full amount of yardage for unclassified excavation as shown in the final estimate allowed by the State Highway Department", the amount of yardage to which he is entitled must be determined, irrespective of whether or not he did the work, from the figures set out in the final estimate of the Highway Department. It seems clear and reasonable because of the following provision of the contract: "but payments by the party of the first part to the party of the second part will be made only for the quantities of work performed", that the plaintiff is entitled to be paid for only such yardage, unclassified and stripping, as he actually did up to the limiting figures in the Highway Department's final estimate, irrespective of whether or not the general contractor and Collins, another subcontractor, or either of them, did any such work. The plaintiff is entitled to be paid for the quantities of work which he actually did; that is to say, if the plaintiff actually removed 90,685 cubic yards of unclassified, and 4,670 cubic yards of stripping excavation, he is to be paid for such yardage. Now if the general contractor and Collins actually removed some yardage, then the total yardage removed would exceed the figures set out in the final estimate, and would correspond with the yardage determined by Wunderlich's cross-section and calculation. The yardage so removed by Collins and the general contractor cannot be deducted from the total yardage set out in the final estimate and deducted from the amount of yardage which the plaintiff actually removed. Assuming that the proof establishes the fact that Hardaway and Collins did 4,550.5 cubic yards of unclassified excavation, even with the addition of the 4,550.5 cubic yards of unclassified excavation to the 90,685, the total yardage as found by the Wunderlich cross-sections, namely, 95,655 cubic yards, is not exceeded.

Whether or not "force account" work was converted to unclassified excavation, the final estimate disclosed the yardage of unclassified excavation which the general contractor agreed to pay plaintiff, but it satisfactorily appears that the total of the unclassified excavation work done by the plaintiff is equal to at least a total of 90,685 cubic yards, and under the contract plaintiff is entitled to that amount of unclassified excavation. It also appears satisfactorily from the evidence that the stripping excavation done by the plaintiff was at least 4,670 cubic yards, and under the contract between plaintiff and the general contractor, plaintiff is entitled to be paid for those items of yardage.

■ The State Highway Department made and filed a final estimate on this project in February, 1935. No apportionment

of unclassified and stripping excavation was made to the general contractor, plaintiff, or any of the subcontractors on the job. Thereafter, and on April 22, 1936, Mr. Herzberg, one of the Highway Commissioners for the State, wrote a letter to the general contractor wherein he attempted to explain the additional allowance of yardage made in the final estimate. That letter, of course, is no part of the final estimate. The Highway Department for the State has, in its estimates, certified to this item of work done on the job. The amounts so certified and found by the State are binding on the State, as well as on the contractors on the job. In the contract between the general contractor and the State it is provided, "The decision of the State Highway Commission upon any question connected with the execution of the contract * * * shall be final and conclusive," and this provision is incorporated in the contract between the general contractor and this plaintiff. It was agreed on the trial that the word "execution", as used in the contract, meant "performance". The authority of the engineer relates to disputes arising in the performance of the work which might interfere with the progress thereof. This clause cannot be interpreted so as to deprive the parties of a judicial determination of the question of the compensation to which plaintiff may be entitled under the contract. Gammino v. Inhabitants of Town of Dedham, 1 Cir., 164 F. 593, 600. No power or authority is given in the general or subcontract to the Highway Commission or its engineers to make any allocation of yardage.

■■■■ (4) It is next contended by the defendant that the general contractor, on April 29, 1935, issued and mailed to the plaintiff its check in the sum of $9,897.26, and that it was accepted in full in final settlement, accord and satisfaction of the balance due or earned by the plaintiff. This matter is set out as a defense in the answer, but on the trial of the case, a second check, bearing date July 19, 1935, in the amount of $212.45, was produced and received in evidence, and it is argued by the defendant that the two checks, with the legends appearing thereon, constitute a final settlement of the account between plaintiff and the general contractor. The check of April 29, 1935, bore two endorsements, one reading "in full and final settlement for work performed on * * *" and the other reading "Endorsement constitutes receipt in full for the within ac-

count. No other receipt required". The check of July 19, 1935, in the sum of $212.45, was accompanied by the following explanation: "A total yardage of 90,685 cubic yards unclassified excavation was allowed in the final estimate, and we find that there is due you through an error on our part 607 cubic yards unclassified excavation, and we are enclosing our check in payment of this amount", and bore the endorsement, "Additional yardage due on final estimate * * *", and the further endorsement, "Endorsement constitutes receipt in full for the within account. No other receipt required." The general contractor transmitted these checks by mail from the State of Georgia to the plaintiff at Jefferson City, Missouri, and thereby authorized the use of the same means either for rejection or acceptance of the offer. Patrick v. Bowman, 149 U.S. 411, 424, 13 S.Ct. 866, 37 L.Ed. 790; H. Muehlstein & Co. v. Hickman, 8 Cir., 26 F.2d 40, 58 A.L.R. 1294. Accordingly, the validity of the contract, if any, must be determined by the laws of the State of Missouri. Scudder v. Union Nat. Bank, 91 U.S. 406, 23 L.Ed. 245. The law of Missouri must govern in the matter of accord and satisfaction. Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Ruhlin v. N. Y. Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L. Ed. 1290.

■■■■ There was an exchange of letters between the plaintiff and the general contractor subsequent to the receipt of the check of April 29, 1935, by the plaintiff, plainly indicating that the check was not received by the plaintiff in full payment of his claim against the general contractor. On May 31, 1935, the general contractor wrote to plaintiff and stated in part that Mr. Hardaway, of the firm of the general contracting company, suggested a conference with the plaintiff with the view of settling the matter. An accord and satisfaction is what the words import—an actual agreement about a matter in dispute and a settlement pursuant to the agreement. Defendant has pleaded the payment and acceptance of a sum of money in full satisfaction of the claim. The plaintiff replies, admitting payment of the sum of money, but denying its acceptance in satisfaction of its claim. Thereupon it becomes the duty and burden of the defendant to prove the acceptance of said sum of money in satisfaction of plaintiff's claim.

650

It is argued by the defendant that the checks containing the legend "payment in full" amount to a contract between the parties, payee and maker, upon the endorsement and cashing of the said checks by the payee. Four elements of a contract are absent: first, a good and sufficient consideration; second, clear words expressing the agreement; third, to do or not to do a particular thing; fourth, the assent of both parties thereto. Treat the language on the checks as you will, it does not even constitute a promise on the part of the payee, and it certainly cannot be considered as sufficient to constitute a contract or agreement. It is a mere admission of a past transaction or of an existing fact, and the checks must be regarded as receipts only, and not as contracts. The claim of plaintiff was not unliquidated in the ordinary acceptation of the term. The general contractor paid and the plaintiff accepted and applied only what the company conceded it owed. The company suffered no detriment by paying that amount. It yielded nothing. The plaintiff received nothing more than the company conceded was due him. If the general contractor, while conceding that it owed a certain sum of money to the plaintiff, had paid to the plaintiff a greater sum than that which it conceded, it would have suffered a detriment by and to that extent. Under such a circumstance, there would have been a consideration for the plaintiff's agreement to accept less than he claimed was due him. There can be no accord and satisfaction of a disputed claim unless something of value has been received in full payment thereof to which the creditor, in the opinion of the payor, had no right. In Vaughn v. Conran, Mo. App., 4 S.W.2d 495, March 3, 1928, the Court states [page 496]: "* * * by the payment of the conceded portion of a bill, the debtor suffers no detriment, pays only what he admits is due and would have to pay in any event, and yields none of his claims. Therefore such payment is no consideration for the satisfaction of the balance of the claim in dispute. If the payment includes any part of the disputed portion of the bill, the rule is entirely different." To the same effect is Roland v. Gassman, Mo.App., 41 S.W.2d 198. See, also; Whitmire v. Lawrence, Barry & Stone Counties Mut. Ben. Ass'n, Mo.App., 286 S.W. 842; Pollman & Bros. Coal & Sprinkling Co. v. St. Louis, 145 Mo. 651, 47 S.W. 563.

In order for there to be an accord and satisfaction, such a result must have been intended by the parties, and in all contractual obligations the minds of the parties must meet. In this case it appears that this did not occur. This is indicated by the telegrams and letters exchanged between the general contractor and the plaintiff. On August 6, 1935, the plaintiff wrote the general contractor that he was placing the checks on deposit to his credit in the local bank at Jefferson City, Missouri, and further that he was crediting his account with that amount, but that he wanted it understood that he was not receiving the checks in full payment. These checks were placed on deposit on August 9th. The general contractor had sufficient time within which to stop payment on these checks if he so desired, but he took no action.

Obviously it was the duty of the general contractor to proceed against the action of the plaintiff in crediting the checks in the manner he proposed to do, or to stop payment on the checks, unless he was consenting and agreeing to the application of the amounts of the checks as payments on account. J. P. Burton Coal Co. v. John P. Gorman Coal Co., 1926, 22 Ohio App. 383, 153 N.E. 863. The checks with the legends thereon constituted only admissions, and therefore evidence of the fact that the sums of money represented by such checks was paid on account. They embodied no promises or agreements on the part of the plaintiff, and constituted no more than receipts, and as such were subject to explanation by evidence. Burke v. Ray et al., 40 Minn. 34, 41 N.W. 240. A receipt is not a contract of settlement or conclusive evidence of the terms of the same, and is open to explanation. McKinney et al., v. Harvie, 38 Minn. 18, 35 N.W. 668, 8 Am.St.Rep. 640; Komp v. Raymond, 175 N.Y. 102, 67 N.E. 113. Where the receipt embodies a contract, the rule applicable to contracts obtains and parol evidence is inadmissible to vary and contradict. Fire Insurance Ass'n v. Wickham, 141 U.S. 564, 579, 12 S.Ct. 84, 35 L.Ed. 860.

Judgment should be, and is, ordered in favor of the plaintiff.